UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**Ajamu M. Kafele, et al.,**

    Plaintiffs,

-V-                                                    Case No. 2:03 -CV-886
                                                           JUDGE SMITH
                                                           Magistrate Judge Kemp

**Shapiro & Felty, L.L.P., et al.,**

    Defendants.

<u>**OPINION AND ORDER**</u>

Plaintiffs assert a variety of federal and state law claims arising out of two state court foreclosure actions. Defendants move for summary judgment. For the reasons that follow, the Court grants defendants' summary judgment motions.

**I.. Facts**

Plaintiffs Ajamu M. Kafele and Lisa Barclay are individual citizens of the State of Ohio. Defendants are: Washington Mutual Bank ("WMB"); a WMB employee named Hope Goodson; Mortgage Electronic Registration Systems, Inc. ("MERS"), a mortgage servicing company that was the actual plaintiff in the foreclosure actions; the law firm Shapiro & Felty L.L.P. ("Shapiro & Fellty") , which handled the foreclosure litigation on behalf of WMB and MERS; four individual Shapiro & Felty attorneys; the law firm Lerner, Sampson & Rothfuss (Lerner Sampson"), which provides legal counsel too MERS; and an individual Lerner, Sampson

attorney.

On September 30, 2002, MERS initiated a foreclosure action in the Franklin County, Ohio Common Pleas Court against Barclay, as mortgagor, concerning real property located at 1514 Myrtle Avenue, Columbus, Franklin County, Ohio.  Kafele was not a party to the foreclosure action, and there is no evidence that he ever had a tangible interest in the property.

On December 4, 2002, MERS initiated another foreclosure action in the Franklin County, Ohio Common Pleas Court against Barclay, as mortgagor, concerning real property located at 1449 East Long Street, Columbus, Franklin County, Ohio.  Kafele was not a party to the foreclosure action, and there is no evidence that he ever had a tangible interest in the property.

Plaintiff initiated the instant action on September 29, 2003.

On October 20, 2003, while the foreclosure actions remained pending, a dispute arose between Barclay and WMB concerning which party was entitled to receive $1,464.44 in insurance proceeds payable jointly to them by check for damage to the East Long Street property.  Goodson was the WMB employee who corresponded with Barclay on this issue.  On January 12, 2004, plaintiffs filed an amended complaint in the instant case adding WMB, Goodson and Lerner Sampson as defendants.

On August 13, 2004, this Court issued two opinions that dismissed the first amended complaint and granting plaintiff s leave to file a second amended complaint within thirty days. Plaintiffs filed their second amended complaint on September 13, 2004.  The second amended complaint purports to assert claims under the following legal theories:

1. The federal Fair Debt Collection Practices Act ("FDCPA");

2. Ohio Revised Code § 1345.01 et seq.;

3. The Fourth, Fifth and Fourteenth Amendments to the United States Constitution;

4. 42 U.S.C. §§ 1983, 1985(3), and 1986;

5. The federal Racketeer Influenced and Corrupt Organizations Act ("RICO");

6. Various common law torts;

7. Ohio Revised Code §§ 2307.60, 2307.61.

All of plaintiffs' claims concerning the foreclosure stem from plaintiffs' assertion that MERS was not a holder in due course of the note and mortgage and was not a real party in interest in the foreclosure actions.

## II. Summary Judgment

The standard governing summary judgment is set forth in Fed. R. Civ. P. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, and must refrain from making credibility determinations or weighing the evidence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51 (2000). The Court disregards all evidence favorable to the moving party that the jury would not be not required to believe. Id. Stated otherwise, the Court must credit evidence favoring the nonmoving party as well as evidence favorable to the moving party that is uncontroverted or unimpeached, if it comes from disinterested witnesses. Id.

The Sixth Circuit Court of Appeals has recognized that Liberty Lobby, Celotex, and Matsushita have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. Street v. J.C. Bradford & Co., 886 F.2d 1472, 1476 (6th Cir. 1989). The court in Street identified a number of important principles applicable in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. Id. at 1479.

Additionally, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Id. (quoting Liberty Lobby, 477 U.S. at 257). The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion. Id. It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" Id. (quoting Matsushita, 475 U.S. at 586).

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." Id. at 1479-80. That is, the nonmoving party

4

has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.  In re Morris, 260 F.3d 654, 665 (6th Cir. 2001).

### III.  Discussion

Defendants seek summary judgment on the following grounds: (1) Kafele's lack of standing; (2) the Rooker-Feldman doctrine; (3) res judicata; (4) attorney immunity; and (5) plaintiffs' FDCPA claims are without merit.

### A.  Standing

Defendants argue that Kafele lacks standing to proceed as a plaintiff in this action because he has no interest whatsoever in the property that was subject to the foreclosure actions. Defendants further contend that Kafele was not a payee on the insurance check, and that he did not have any interest in the proceeds thereof.

It is a fundamental principle of our legal system that, in order to bring a lawsuit, a litigant must have standing to sue.

> Though some of its elements express merely prudential considerations that are part of judicial self-governance, the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  A plaintiff must satisfy three elements to demonstrate standing:

> To satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual and imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely

speculative, that the injury will be redressed by a favorable decision.

<u>Friends of the Earth, Inc. V. Laidlaw Envtl. Servs. (TOC), Inc.</u>, 528 U.S. 167, 180-81 (2000).

Kafele has made no effort to respond to defendants' standing argument by way of affidavit, argument, or otherwise.  The Court finds that Kafele has failed to establish that he suffered any "injury in fact" as a result of defendants' actions.  The Court therefore concludes that Kafele lacks standing to proceed as a plaintiff in this lawsuit.  All of Kafele's claims are hereby dismissed with prejudice.  Kafele is no longer a plaintiff in this case.

### B.  Rooker-Feldman

Both sets of defendants argue that plaintiff's claims are subject to dismissal under the <u>Rooker-Feldman</u> doctrine.  Plaintiffs do not respond to this argument.

The doctrine derives from two U.S. Supreme Court cases, <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923) and <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983).  <u>Feldman</u> held that federal court review of state court proceedings is jurisdictionally limited to the U.S. Supreme Court by 28 U.S.C. § 1257.  "United States District Courts . . . do not have jurisdiction . . . over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional.  Review of those decisions may only be had in this Court."  <u>Feldman</u>, 460 U.S. at 486.  Thus, application to the Supreme Court is "the only avenue for federal review of state court proceedings."  <u>Patman v. Michigan Supreme Court</u>, 224 F.3d 504, 506 (6th Cir. 2000).

A two-part test determines the applicability of the <u>Rooker-Feldman</u> doctrine.  <u>Tropf v. Fidelity National Title Ins. Co.</u>, 289 F.3d 929, 937 (6th Cir. 2002).  First, the issue before the

federal court must be inextricably intertwined with the claim asserted in the state court proceeding.  Id.

> In defining what is meant by "inextricably intertwined," this court has adopted the reasoning of Justice Marshall and of the Eighth Circuit that:
>   [T]he federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment.
>   Catz v. Chalker, 142 F.3d 279, 293 (6th Cir.1998) (quoting Keene Corp. v. Cass, 908 F.2d 293, 296-97 (8th Cir.1990) (quoting Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 25, (1987) (Marshall, J., concurring))), amended by 243 F.3d 234 (6th Cir.2001).

Peterson Novelties, Inc. v. City of Berkley, 305 F.3d 386, 391 (6th Cir. 2002).  Second, for Rooker-Feldman to apply, the claim before the federal district court must be "'a specific grievance that the law was invalidly – even unconstitutionally – applied in the plaintiff's particular case.'"  Tropf, 289 F.3d at 937 (quoting Catz, 142 F.3d at 293).  The doctrine does not apply, however, if the claim is a general challenge to the constitutionality of the state law applied in the state proceeding.  Id.

Turning to the instant case, the Court finds that Barclay's claims are inextricably intertwined with the state court's implicit determination that the foreclosure actions were valid and properly brought by MERS.  Barclay's claims have merit only to the extent the state court's judgment in this regard was wrong.  Moreover, Barclay's claims entail specific grievances that the state court misapplied the law to the foreclosure proceedings.  For these reasons, the Court holds that all of Barclay's claims arising from the foreclosure actions are barred under the Rooker- Feldman doctrine.

### C.  Res judicata

Defendants also argue that Barclay's claims are barred under the doctrine of res judicata. Plaintiffs do not respond to this argument.

Under res judicata, also referred to as claim preclusion, a final judgment on the merits of an action precludes the parties and their privies from relitigating claims that were or could have been raised.  Federated Department Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981).  A claim is barred under res judicata, if the following elements are present:

> (1) a final decision on the merits by a court of competent jurisdiction;  (2) a subsequent action between the same parties or their "privies"; (3) an issue in the subsequent action which was or which should have been litigated in the prior action; and (4) an identity of the causes of action.

Becherer v. Merrill Lynch, 193 F.3d 415, 422 (6th Cir. 1999)(quoting Bittinger v, Techumseh Prods. Co., 123 F.3d 877, 880 (6th Cir 1997)).

Here, the state foreclosure actions resulted in final decisions on the merits by a court of competent jurisdiction.  The present lawsuit is between the same parties as well as law firms and attorneys who are privies of parties to the foreclosure actions.  The Court finds that plaintiffs' claims should have been raised in the foreclosure actions.  Lastly, the Court finds that there is an identity of the causes of action.  All of plaintiffs' claims regarding the foreclosures stem from their assertion that MERS was not the real party in interest.  The state court implicitly ruled on this issue when it granted MERS relief in the foreclosure actions.  For these reasons, the Court concludes that plaintiffs' claims regarding the foreclosures are barred under the doctrine of res judicata.

### D.  FDCPA

Defendants assert that plaintiff cannot maintain a claim under the FDCPA because plaintiffs have not presented any evidence that the loans were for "personal, family or household purposes." Defendants contend that Barclay purchased the subject properties to use as rental units. Defendants further argue that plaintiffs have not, in any event, identified any FDCPA violations. Plaintiffs do not respond to these arguments.

The FDCPA provides in part as follows:

> The term debt means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money property, insurance, or services which are the subject matter of the transaction are *primarily for personal, family, or household purposes*, whether or not such obligation has been reduced toto judgment.

15 U.S.C. § 1692(a)(5) (emphasis added).

Plaintiffs have made no attempt to come forward with evidence showing that the subject properties were " primarily for personal, family, or household purposes." Plaintiffs' claims under the FDCPA therefore fail as a matter of law.

### E.  RICO claim against WMB, Goodson

In its opinion and order filed August 13, 2004, the Court indicated that it would grant plaintiffs leave to amend their purported RICO claim against WMB and Goodson concerning the insurance proceeds, and would later revisit the issue. The Court finds that plaintiffs still fall far short pleading the RICO predicate acts with requisite particularity in their second amended complaint (Doc. 36). Plaintiffs' RICO claims against WMB and Goodson are therefore dismissed with prejudice. For that matter, plaintiff fails to state a viable RICO claim against any of the defendants.

### IV.  Disposition

Based on the above, the Court **GRANTS** defendants' summary judgment motions  (Docs. 44, 45, 46).

The Clerk shall enter final judgment in favor of defendants, and against plaintiffs, dismissing this action in its entirety with prejudice.

The Clerk shall remove this case from the Court's pending cases and motions lists.

The Clerk shall remove Docs. 44, 45 and 46  from the Court's pending motions list.

**IT IS SO ORDERED.**

    **/s/ George C. Smith**
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**